UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| United States of America, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | S2 14 Cr. 534 (JSR) |
| | : | |
| Harvey Newkirk, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

# DEFENDANT HARVEY NEWKIRK'S
# RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE

HARRIS, O'BRIEN, ST. LAURENT &
CHAUDHRY LLP
111 Broadway, Suite 1502
New York, NY 10006
T. (212) 785-5550
F. (212) 202-6206

*Attorneys for Defendant Harvey Newkirk*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ................................................................................................ 2

████ ██████████████████████████████████ .................... 2

██████████████████████████ ................................... 3

██████████████████████████████████ 4

████████████████████████ ................ 6

II.  Newkirk's Statements to Government Agents Should Be Admitted to Avoid Misleading the Jury or Prejudicing Mr. Newkirk ............................... 8

   A.  The Law Applicable to the Admission of Statements By Parties .................. 9

   B.  Those Statements Sought to be Introduced by the Government Must Be Accompanied By Sufficient Other Statements to Give the Jury a Fair Impression of What Mr. Newkirk Actually Said ............................... 9

      1.  Statements from February 12, 2014 Interview ........................... 9

      2.  Statements from February 14, 2014 Interview ........................... 10

      3.  Statements from January 22, 2015 Interview ............................ 11

      4.  Statements from the March 17, 2015 Interview ......................... 12

   C.  Additional Relief Sought by Mr. Newkirk ................................... 13

III.  Expert Testimony On Key Terms and Background Facts In the Maxim Deal Should Be Admitted ................................................................. 13

   A.  Lay Testimony Is Not Available to Address Key Topics in this Case ........... 14

   B.  The Proposed Topics Are a Proper Subject of Expert Testimony ............... 16

   C.  The Proposed Defense Expert is Well-Qualified ............................. 18

   D.  The Expert Disclosures By the Defense Are Adequate ........................ 19

CONCLUSION ............................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of China v. NBM LLC,*
  359 F.3d 171 (2d Cir. 2004).................................................................................... 15

*Borawick v. Shay,*
  68 F.3d 597 (2d Cir. 1995)...................................................................................... 17

*Clarke v. LR Systems,*
  219 F.Supp.2d 323 (E.D.N.Y. 2002) ...................................................................... 17

*Cotto v. Herbert,*
  331 F.3d 217 (2d Cir. 2003)...................................................................................... 5

*Crawford v. Washington,*
  541 U.S. 36 (2004)..................................................................................................... 4

*Daubert v. Merrell Dow Pharm., Inc.,*
  509 U.S. 579 (1993)................................................................................................. 16

*Davis v. Alaska,*
  415 U.S. 308 (1974)................................................................................................... 5

*Delaware v. Van Arsdall,*
  475 U.S. 673 (1986)................................................................................................... 5

*In re Blech Sec. Litig.,*
  No. 94–7696, 2003 U.S. Dist. LEXIS 4650, 2003 WL 1610775
  (S.D.N.Y. Mar. 27, 2003) ...................................................................................... 18

*In re Longtop Fin. Technologies Ltd. Sec. Litig.,*
  32 F. Supp. 3d 453 (S.D.N.Y. 2014) ..................................................................... 18

*In re Zyprexa Prods. Liab. Litig.,*
  489 F.Supp.2d 230 (E.D.N.Y. 2007) ...................................................................... 17

*Lidle v. Cirrus Design Corp.,*
  No. 08–CV–1253, 2010 WL 2674584 (S.D.N.Y., July 6, 2010)............................ 17

*Nimely v. City of New York,*
  414 F.3d 382 (2d Cir. 2005)............................................................................... 16, 17

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.,*
  No. 11-CV-726 CBA, 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013) ...................... 16

*Pointer v. Texas*, 380 U.S. 400 (1985) ................................................................................ 5

*Remington v. Newbridge Sec. Corp.*,
   No. 13-60384-CIV, 2014 WL 505153 (S.D. Fla. Feb. 7, 2014) .............................. 18

*See United States v. Haynes*,
   729 F.3d 178 (2d Cir. 2013)................................................................................ 15

*United States v. Blanco*,
   861 F.2d 773 (2d Cir.1988) ................................................................................ 6

*United States v. Castro*,
   813 F.2d 571 (2d Cir.1987) ................................................................................ 9

*United States v. Finazzo*,
   No. 10-CR-457 RRM RML, 2013 WL 618425 (E.D.N.Y. Feb. 19, 2013) .............. 20

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2005)................................................................................ 15

*United States v. Grinage*,
   390 F.3d 746 (2d Cir. 2004)................................................................................ 15

*United States v. Johnson*,
   507 F.3d 793 (2d Cir. 2007)................................................................................ 9

*United States v. White*,
   692 F.3d 235 (2d Cir. 2012)................................................................................ 6

*United States v. Wilson*,
   493 F. Supp. 2d 484 (E.D.N.Y. 2006) .............................................................. 19

*United States v. Yildiz*,
   355 F.3d 80 (2d Cir. 2004).................................................................................. 9

**Statutes**

Fed. R. Crim. P. 16 ...................................................................... 2, 13, 16, 18, 19

Fed. R. Crim. P. 16 (b)(1)(C) ................................................................................ 19

FRE 106 ................................................................................................................ 9

FRE 608(a) ........................................................................................................... 6

FRE 608(b) ........................................................................................................... 3

FRE 701 .......................................................................................................... 14, 15

FRE 701(c) ................................................................................................................ 15

FRE 702 ........................................................................................................ 14, 15, 16

FRE 801(d)(2)(A) ........................................................................................................ 9

**Other Authorities**

Fed.R.Evid. 702 Advisory Comm. Note (2000) ......................................................... 17

Mr. Harvey Newkirk, the Defendant, through undersigned counsel, respectfully submits this memorandum of law in opposition to the government's Motion *In Limine* filed October 12, 2015, which seeks to: 1) ████████████████████████████████████████

████████████████████████████████████████████████ 2) allow presentation by the government of certain statements allegedly made by Mr. Newkirk while preventing the defense from offering other statements made by him; and 3) preclude Mr. Newkirk's use of an expert witness.

For the reasons identified below, each of these applications should be denied.

**PRELIMINARY STATEMENT**



Moreover, the government seeks to offer certain statements allegedly made by Mr. Newkirk while precluding the defense from offering others that would place these statements in the proper context. This argument contradicts the strong preference to admit such statements under the "rule of completeness", in the interests of fairness and to avoid juror confusion. Accordingly, the Court should permit the defense to supplement these statements, and provide them in such way so as not to distort the narrative presented by Mr. Newkirk.

Finally, the government seeks to preclude expert testimony testimony concerning concerning the financing and consummation of complex commercial transactions such as the Maxim Acquisition—one of the key subjects of Mr. Newkirk's upcoming trial.  For this purpose, the defense wishes to provide the testimony of David Lallouz—an experienced attorney in the area of mergers and acquisitions.  First, the government argues that expert testimony is unwarranted on the proposed subjects and assets its intention to offer lay testimony that it believes will be adequate to assist the jury's comprehension on these subjects.  As described in detail below, the type of testimony that the government (and the defense) seek to elicit on these subjects is based on specialized knowledge and, accordingly, is not susceptible to opinion testimony by a lay person.  In the alternative, the government argues that the defense's disclosures as to the substance of the defense's proposed expert testimony were inadequate under Fed. R. Crim. P. 16, because they failed to identify the expert and the opinions that expert would give. While Mr. Newkirk's initial disclosures were admittedly incomplete, the defense acknowledged this, and previously stated that those disclosures would be supplemented. While these disclosures have not yet been made, because the continuance of the original trial date rendered the defendant's initial expert unavailable, the defense will shortly give sufficient notice to the government to allow for the effective cross-examination of the defense expert. Given the importance of this testimony, preclusion is an extreme and unwarranted remedy.

The government's motions should be denied.

## ARGUMENT

**I.** ████████████████████████████████████████████████
████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████









[REDACTED]

## II.  Newkirk's Statements to Government Agents Should Be Admitted to Avoid Misleading the Jury or Prejudicing Mr. Newkirk

The government seeks to admit statements made by Mr. Newkirk to government agents prior to his arrest and to exclude others that would place them in the proper context.  As to a substantial number of other statements made by Newkirk, the government, apparently, does not seek either to offer them or to preclude the defense from inquiring as to them.[5]

For the reasons described below, statements the government now seeks to preclude should be admitted into evidence so that the jury may fully understand the narrative offered by Mr. Newkirk.

---

[5] *See* Gov't Brief, 11-12 ("The Government does not intend to elicit the following statements made by Newkirk, in sum and substance, during the Pre-Arrest Interviews (the "Excised Statements"),and seeks to preclude the defense from eliciting any evidence regarding the Excised Statements or from otherwise presenting the Excised Statements to the jury: [listing five statements sought to be excluded]").

A.       *The Law Applicable to the Admission of Statements By Parties*

The statement of any party in a case is admissible by the opposing party under Federal Rule of Evidence 801(d)(2)(A).  This rule applies equally in civil and criminal cases, with the notable exception that the government is not bound in a criminal case by the out-of-court statements of its agents.  *See United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004).  However, this rule requires that such statements be admitted in substantially complete form to avoid giving the jury a misleading impression or distorting the meaning of the statements that were sought to be admitted.  Under "the rule of completeness embodied by Federal Rule of Evidence 106 ..., even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States v. Johnson,* 507 F.3d 793, 793 (2d Cir. 2007) (quoting *United States v. Castro,* 813 F.2d 571, 575–76 (2d Cir.1987) (footnote omitted)).

B.       *Those Statements Sought to be Introduced by the Government Must Be Accompanied By Sufficient Other Statements to Give the Jury a Fair Impression of What Mr. Newkirk Actually Said*

Described below are the statements sought to be introduced by the government and the statements sought to be excluded by it (the "Excised Statements") and Mr. Newkirk's position concerning same.  Mr. Newkirk does not now move to exclude any of the statements that the government has identified as being made by him to its agents that it has stated it intends to offer into evidence against him.[6]

1.    Statements from February 12, 2014 Interview

---

[6] Mr. Newkirk reserves the right to challenge the admission of any other statements into evidence.

The government seeks to introduce statements allegedly made by Mr. Newkirk to the effect that "he had represented the Dardens in 2011 and 2012 on basketball and boxing promotions." (Gov't Br. 10) from this interview.  However, the government wishes to bar Mr. Newkirk from offering evidence of his alleged prior statement to a government agent that "Junior said that Senior authorized him to sign some documents" from the same interview. *Id.* at 11.

Mr. Newkirk objects to the admission of statements concerning the purported basketball and boxing promotions on the grounds of relevance under FRE 404(b), as described in Mr. Newkirk's *in limine* motion of October 12, 2015.   Moreover, the Excised Statement is necessary for the jury to get a obtain a fair understanding of the nature Mr. Newkirk's involvement in these transactions and his relationship to Junior and Calvin Darden Senior ("Senior").

2.  Statements from February 14, 2014 Interview

The government seeks to introduce statements allegedly made by Mr. Newkirk to government agents on February 14, 2014 to the effect that Mr. Newkirk represented Calvin Darden, Sr. ("Senior"); that Senior had emailed him a signed engagement agreement; and further that Senior had called at a phone number ending in 5559 but had never called a phone number ending in 4067.   At the same time, the government seeks to exclude certain other statements allegedly made at the same interview by Mr. Newkirk that "Junior had said that Senior had said that Senior was going to let Junior handle the OpenGate Capital litigation." (Gov't Br. 10, 11). Insofar as all three statements address direct communications between Mr. Newkirk and Senior (or the lack thereof), Mr. Newkirk should be permitted to cross-examine government witnesses about this proposed Excised Statement.   As noted in connection with other statements from other interviews, the subject of Mr. Newkirk's communications with Senior (or lack thereof) throughout the course of the Maxim transaction are going to be a subject of extensive testimony

during the upcoming trial and the government intends to offer purportedly contradictory statements by Mr. Newkirk at different times.  Under the circumstances, limiting the disclosure of those statements by Mr. Newkirk on this subject to those of the government's choosing would unfairly distort Mr. Newkirk's narrative on this issue.

3.   Statements from January 22, 2015 Interview

The government wishes to elicit from its witnesses that in a January 22nd interview, Mr. Newkirk stated that i) Senior was his client in the Maxim purchase; ii) he and Senior discussed Senior retaining separate litigation counsel for the OpenGate lawsuit; iii) he communicated first with the cdarden@thereign.com email address in 2011; iv) in December 2013 or January 2014 Senior told him none of Senior's personal property was to be used as collateral for the Maxim deal without his permission; and v) by December 2013 Senior asked for all of the documents from the Maxim deal.

The government, however, wishes to exclude the following:  that in a February 19, 2014 interview Mr. Newkirk stated that he believed emails from the cdarden@thereign.com and a crdarden@dardendevelopment.com email belonged to Senior up until shortly before Junior's arrest.  The government also wishes to exclude statements from the January 22, 2015 interview by Mr. Newkirk that i) he believed during the course of the Maxim transaction that the cdarden@thereign.com and a crdarden@dardendevelopment.com email addresses belonged to Senior; ii) Senior called him in November 2013 regarding the OpenGate litigation; and iii) Newkirk said that he had not discussed the personal guarantee with Senior, that Senior had said he wanted to be updated every week, and that Senior never stated he wanted to end the representation while Mr. Newkirk was at Bryan Cave.

11

Defense counsel should be allowed to cross-examine the government's witnesses about these proposed Excised Statements.  Clearly, conversations Mr. Newkirk had about the emails he used to communicate with Junior or Senior should be fair ground for cross-examination given that the government intends to offer testimony from its witnesses about Mr. Newkirk's statements on the same subject.  As described above, the government should not be permitted to inquire into a subset of statements Mr. Newkirk had with government agents about his communications with Senior, while excluding others, particularly when, as is the case here, none of these communications are, on their face, clearly inculpatory or exculpatory.

    4.   <u>Statements from the March 17, 2015 Interview</u>

The government wishes to elicit from one of its witnesses that Mr. Newkirk stated that Senior was not his client with regard to the Maxim deal when confronted with Senior's assertion that he had not been informed of the OpenGate lawsuit.  The government, however, wishes to exclude Mr. Newkirk's statements that i) he believed Senior used the cdarden@thereign.com and a crdarden@dardendevelopment.com email addresses; ii) Senior had not told Mr. Newkirk to terminate the deal; and iii) Senior had not told Mr. Newkirk he had not signed any transaction documents associated with the Maxim acquisition.

The Court should permit inquiry as to these proposed Excised Statements.  First of all, statements about the email addresses Mr. Newkirk believed to belong to Senior are intertwined with the statement the government seeks to offer about Mr. Newkirk communicating with the crdarden@dardendevelopment.com email address, as just noted. Communications about Senior saying he had not signed documents or that he had said to terminate the deal are sufficiently closely related to the purported statement by Mr. Newkirk as to whether or not Senior was a

client in connection with the Maxim transaction as to warrant their admissibility, as such statements relate to Senior's involvement in and responsibility for the Maxim transaction.

C.     *Additional Relief Sought by Mr. Newkirk*

Mr. Newkirk respectfully requests that the Court permit defense counsel to inquire as to any statements made by Mr. Newkirk to government agents should Mr. Newkirk ultimately decide to testify in this case. Mr. Newkirk also seeks the Court's permission to inquire of government agents and other witnesses about the fact of Mr. Newkirk's prior meetings with the government (including the time, place and length of such meetings, the topics covered and the persons who participated) to accurately inform the jury that government has selected only a handful of statements from lengthy and involved meetings with Mr. Newkirk.  Mr. Newkirk should also be permitted to cross-examine the government witnesses about whether Mr. Newkirk actually made the statements to which those witnesses would testify and whether those witnesses misunderstood or misconstrued those statements. Finally, Mr. Newkirk requests permission to inquire as to any statement that the government has not sought to preclude.

**III.   Expert Testimony On Key Terms and Background Facts In the Maxim Deal Should Be Admitted**

Finally, the government moves to preclude the defense from offering expert testimony about the Maxim transaction.  The government first argues that the terms and techniques associated with mergers and acquisitions in general and the Maxim transaction in particular are not proper subjects of expert testimony and that lay testimony is sufficient to address the subjects as to which the defense expert would testify.  The government second argues that it will be prejudiced by the defense's inadequate notice under Fed. R. Crim. P. 16. Neither of these arguments has merit.

As described in more detail below, not only is lay testimony insufficient to address these issues it cannot be properly admitted on the subjects as to which the defense expert would testify. Moreover, while the defendant's initial disclosures could have better described the proposed expert testimony, those disclosures will be supplemented shortly.

A.      *Lay Testimony Is Not Available to Address Key Topics in this Case*

The government argues that the defendant's proposed expert testimony is unnecessary because the Maxim transaction itself, the terms in which the deal was described by participants, including auction, bid letter, personal guarantee, springing loan, bridge loan, collateralized loan, extension fee, the manner in which stock could be pledged to secure a deal, and the nature of the transaction as evincing indicia of fraud are all susceptible of understanding by a lay jury without assistance from an expert. (Gov't Br. 19). The government goes on to argue that it will provide a more than sufficient lay witness, *viz.*, an attorney from Bryan Cave LLP, who can testify about the transaction and explain it to the jury. *Id.*

This argument, however, is based on a misunderstanding of the distinction between lay and expert testimony.  As described in more detail below, not only is lay testimony not a sufficient substitute for defendant's proposed expert testimony, the lay testimony the government has stated it will seek to elicit is not even admissible into evidence as such.

The distinction between lay and expert witness opinion testimony is that a lay witness is limited to testifying "to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE 701. The burden of proving each of the three

14

foundational elements is on the party eliciting the required opinions from the lay witness. *See United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004).

The 2000 Amendments, incorporated into the 2001 version of FRE 701, added clause "(c)" to the end of the rule to clarify the distinction between lay and expert testimony. *See* FRE 701(c) (adding the requirement that opinion testimony by lay witnesses be limited to opinions "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). As a result of this addition, the rule has been clarified such that any opinion testimony based on a witness's particularized training and experience or "specialized knowledge" (as opposed to the witness's direct observation of the events in question) must come in through a witness properly admitted to testify under FRE 702:

> Thus, in considering the third prerequisite for lay opinion testimony, a court must focus on "the reasoning process" by which a witness reached his proffered opinion. 4 Weinstein's Federal Evidence § 701.03[1]. If the opinion rests "in any way" upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701. *Id.*; see Fed.R.Evid. 701, Advisory Committee Notes to 2000 Amendments ("The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702."); *see also Bank of China v. NBM LLC*, 359 F.3d [171] at 182 [(2d Cir. 2004)] (finding error in admission of evidence under Fed.R.Evid. 701 that was "not a product of [witness's] investigation" but rather "reflected [his] specialized knowledge").

*United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (reversing conviction on basis that drug agent's testimony concerning use of codes by drug dealers should have been considered under FRE 702 not 701). Virtually any testimony based on experience or training has to be considered under FRE 702, not 701. *See United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) (reversing in part because border agent's testimony about drug traps in gas tanks should have been considered on FRE 702); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip.,*

15

*Ltd.*, No. 11-CV-726 CBA, 2013 WL 4409434, at *11 (E.D.N.Y. Aug. 2, 2013) *report and recommendation adopted as modified,* No. 11-CV-00726 CBA RLM, 2013 WL 5502852 (E.D.N.Y. Oct. 1, 2013) (susceptibility of software to copyright was subject requiring expert testimony).

The government's attempt to characterize its intended witness, a mergers and acquisitions attorney with years of experience in the specialized world of effecting transactions of corporations and securities, as a "lay witness" who can easily explain the terms and methodologies of such transactions to a lay jury does not pass muster under this standard. It cannot be denied that in describing the transaction or in defining terms associated with it, such a witness would not be drawing upon direct observations of the transaction or of any investigation into it but from the years of experience and training that lawyer had in this particular field. Accordingly, the government's proposed witness must be considered under FRE 702 and, absent proper disclosure under Fed. R. Crim. P. 16, such a witness must be precluded.

<em>B.    The Proposed Topics Are a Proper Subject of Expert Testimony</em>

The Supreme Court has made clear that a district court has a "gatekeeping" function under Rule 702 and must "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The "gatekeeping" role of the court requires it to undertake a three-part analysis by considering whether (1) the witness is qualified to be an expert; (2) the expert's opinion is based upon reliable data and methodology; and (3) the expert's testimony on a particular issue will assist the trier of fact. *See Nimely v. City of New York*, 414 F.3d 382, 396 (2d Cir. 2005).

The Second Circuit's standard for admissibility of expert testimony under these guidelines is "especially broad" and the rejection of expert testimony is the "exception rather

16

than the rule." *Clarke v. LR Systems,* 219 F.Supp.2d 323, 332 (E.D.N.Y. 2002) *quoting*

Fed.R.Evid. 702 Advisory Comm. Note (2000).  The assumption the court starts with is that a

well-qualified expert's testimony is admissible.  *Nimely* 414 F.3d at 395-96; *see also In re*

*Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 282 (E.D.N.Y. 2007); *Lidle v. Cirrus Design*

*Corp.*, No. 08–CV–1253, 2010 WL 2674584, at *4 (S.D.N.Y., July 6, 2010); *Borawick v. Shay*,

68 F.3d 597, 610 (2d Cir. 1995).

        As disclosed in the defense counsel's October 5, 2015 notice and as will be fleshed out

by the defendant's report, the proposed expert, David Lallouz, will testify concerning:  the role

of a security and the manner of effecting a security interest in a secured transaction; the role of a

personal guarantee and/or pledge of collateral by an individual in such a transaction; the

responsibility among the parties for due diligence on different aspects of the transaction; the

formation of bidding entities as part of the acquisition process; the process of raising capital in

general, including the solicitation of multiple offers premised on the same underlying collateral

being used as security; the definitions of key terms in such transactions; the susceptibility of a

group of assets to being pledged multiple times; the role of the investment bank running an

auction of a distressed asset; the role of lawyers for a corporation in such a transaction, including

their respective responsibilities to the client corporation and its officers, as well as the

significance of conflict checks for lawyers handling such matters; and to otherwise testify as to

topics in aid of the jury's understanding concerning the private sale of a distressed asset in a

secured transaction.  The report will further set forth the expert's specific opinions on these

subjects that he will give at trial.

        Courts routinely permit such testimony by experts in cases in which financial transactions

are at issue and where a jury's understanding of the terms and nature of those transactions is

helpful to their ability to come to decision on critical facts.  *See, e.g., In re Longtop Fin. Technologies Ltd. Sec. Litig.,* 32 F. Supp. 3d 453, 463 (S.D.N.Y. 2014) (permitting expert to testify as to the operations of defendant's finance department and duties of chief financial officer of public company);  *In re Blech Sec. Litig.,* No. 94–7696, 2003 U.S. Dist. LEXIS 4650, at *53–54, *56–57, 2003 WL 1610775 (S.D.N.Y. Mar. 27, 2003) (allowing expert testimony regarding customs of securities industry to help "jury understand unfamiliar terms and concepts");  *Remington v. Newbridge Sec. Corp.*, No. 13-60384-CIV, 2014 WL 505153, at *3 (S.D. Fla. Feb. 7, 2014) (permitting expert testimony concerning reasonableness of identified "handling fees" in broker-dealer context).

As noted above, the government opposes the use of an expert, arguing that the process of financing such complex commercial transactions can easily be explained to the jury by the "lay witness" that it intends to call from Bryan Cave LLP. (Gov't Br. 18-19).  By opting  to call a lawyer, trained and experienced in effecting mergers and acquisitions, to define technical terms and describe typical business practices for a lay jur, the government implicitly concedes the necessity of specialized testimony.[7]  The sole disagreement between the government and the defense is whether this is an appropriate subject for expert or lay witness.

As described above, because such testimony can only be admitted through a qualified expert and because it is indisputably relevant to the matters to be considered at trial, the Court should permit the defense to offer testimony on these subjects through its expert.

C.      *The Proposed Defense Expert is Well-Qualified*

Mr. Newkirk's proposed expert witness, David R. Lallouz is well-qualified to testify as an expert in these areas. He has been practicing transactional law in the United States and

---

[7] The government has not provided Rule 16 notice of any proposed expert.

Canada for almost fifteen years.  He is a partner at the law firm of Tannenbaum Helpern Syracuse & Hirschtritt LLP where he works in its Corporate, Capital Formation and Securities Law group.  He advises clients on complex corporate transactions; he structures, negotiates and implements mergers and acquisitions, private equity transactions, strategic investments, venture capital investments, joint ventures and public offerings; and further represents investors in PIPE (private investments in public equity) transactions and registered direct offerings. In addition, he regularly advises and counsels clients on corporate governance, business formation and capitalization, as well as commercial and contractual relationships. He is more than capable, based upon his training and experience on testifying on the subjects described above and in aiding the jury's understanding of them.

Moreover, Mr. Lallouz has, presumably, substantially similar experience to the unidentified attorney from Bryan Cave LLP that the government believes is a proper witness for the jury.  For all of these reasons he should be permitted to testify.

### D.      The Expert Disclosures By the Defense Are Adequate

The government additionally moves to preclude the defense from offering an expert on the basis that Mr. Newkirk's pre-trial disclosures are inadequate under Fed. R. Crim. P. 16 (b)(1)(C).  This argument is without merit.

Under Fed. R. Crim. P. 16(b)(1)(C)(i), the defense obligation to provide an expert report is triggered only if the government, upon demand by the defense, furnishes such a report.  As noted above, despite the fact that the government will seek to offer evidence on this subject matter, it has not provided any expert disclosure whatsoever. *See United States v. Wilson*, 493 F. Supp. 2d 484, 490 (E.D.N.Y. 2006); *see also United States v. Finazzo*, No. 10-CR-457 RRM

19

RML, 2013 WL 618425, at *2 (E.D.N.Y. Feb. 19, 2013) (defense obligation triggered when "the government fully discloses its expert testimony or that it represents that it has no experts").

In addition, and in the alternative, the defense will have adequately disclosed the testimony of its proposed expert by the time of trial. Initially, the defense submitted an email dated October 5, 2015 (attached as Exhibit 2 to the Gov't Brief), describing in general terms the substance of the proposed expert testimony but not identifying the proposed expert, and further noting that additional disclosures would follow once an expert was identified. Shortly thereafter, on October 13th, the defense identified as an expert witness on these subjects Stephen B. Ballas,. However, Mr. Ballas became unavailable to testify when the trial date in this matter was adjourned from October 26th to November 9th.

As a result of Mr. Ballas' unavailability, the defense had to retain a new expert, Mr. Lallouz. The disclosures relating to his testimony will be made shortly and will fully address the government's concerns, by addressing in detail each of the issues as to which Mr. Lallouz will testify, including his opinions, and accordingly will completely address this branch of the government's argument.

## **CONCLUSION**

For the reasons set forth above, Mr. Newkirk respectfully requests that the Court  permit sufficient cross-examination about those of Mr. Newkirk's prior statements sought to be excluded by the

government to avoid jury confusion and prejudice to Mr. Newkirk; exclude the government's proposed lay opinion testimony; and permit the defense expert to testify.

DATED:      New York, New York
            October 22, 2015

                                        Respectfully submitted:


                                        _____/s/_____
                                        Priya Chaudhry
                                        Andrew M. St. Laurent
                                        HARRIS, O'BRIEN, ST. LAURENT
                                        & CHAUDHRY LLP
                                        111 Broadway, Suite 1502
                                        New York, New York 10006
                                        (212) 785-5550

                                        *Attorneys for Defendant Harvey Newkirk*