G7i1dars

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4           v.                              14 Cr. 534 (JSR)
5  CALVIN R. DARDEN, JR.,
6              Defendant.                   Sentencing
7  ------------------------------x
8                                           New York, N.Y.
                                            July 18, 2016
9                                           5:41 p.m.
10
   Before:
11
                  HON. JED S. RAKOFF,
12
                                   District Judge
13
14                     APPEARANCES
15 PREET BHARARA
        United States Attorney for the
16      Southern District of New York
   BY: ANDREW C. ADAMS, ESQ.
17      Assistant United States Attorney
18 FEDERAL DEFENDERS OF NEW YORK INC.
        Attorneys for Defendant
19 BY: JENNIFER L. BROWN, ESQ.
20 ALSO PRESENT:  JAMES HILLIARD, Special Agent, FBI
21
22
23
24
25

G7i1dars

1              (Case called)

2              MR. ADAMS:  Good afternoon, your Honor.  Andrew Adams
3    for the United States, and with me at counsel table is Special
4    Agent James Hilliard of the FBI.

5              THE COURT:  Good afternoon.

6              MS. BROWN:  Good afternoon, your Honor.  Jennifer
7    Brown on behalf of Mr. Darden.

8              THE COURT:  Good afternoon.

9              All right.  We're here for sentence.  The probation
10   office has calculated the guideline level as a total offense
11   level of 24 and a criminal history category of III, leading to
12   a guideline suggested sentence of 63 to 78 months.  Does
13   defense counsel agree with that?

14             MS. BROWN:  Yes, your Honor.

15             THE COURT:  Does the government agree with that?

16             MR. ADAMS:  Yes, your Honor.

17             THE COURT:  All right.  So does the Court, so that is
18   the guideline calculation.

19             Now this Court has never been particularly impressed
20   with guideline calculations to begin with, but in any event,
21   we're dealing here with a defendant who has cooperated and
22   therefore that takes him out of the guidelines, so to speak.
23   Is the government moving now for a nonguidelines sentence
24   pursuant to the cooperation?

25             MR. ADAMS:  I am, your Honor.  And do so move.

1    THE COURT:  Okay.  Fine.  I do have one question about
2 the cooperation that I think we need to take up at the sidebar.
3    MR. ADAMS:  Certainly, your Honor.
4    (Pages 4-7 SEALED)

1           (In open court)

2           THE COURT:  All right.  So we are ready to hear from

3  counsel.  I'll hear first from defense counsel, then from

4  government counsel, and then from the defendant if he wishes to

5  be heard.

6           MS. BROWN:  Thank you, your Honor.  Your Honor, I will

7  note that Mr. Darden does have supporters present here in the

8  courtroom.

9           Your Honor, I'm going to keep my remarks somewhat

10  brief because a large part of my argument has already been

11  presented in the written papers, your Honor, and much of it

12  concerns the items that we just discussed at sidebar, your

13  Honor.

14           THE COURT:  Yes.  And all I'm going to say on the

15  record is that an important feature of the sentence is that

16  Mr. Darden's cooperation was considerable.

17           MS. BROWN:  Your Honor, I do think that if it was

18  just -- I think it is a different scenario, your Honor, if it

19  was just the cooperation that your Honor observed in the

20  Newkirk trial, and it is substantially different in light of

21  the matters we discussed and what you've just said.

22           I recognize, your Honor, that it is a difficult

23  balance in a case like this where there is a great concern, I'm

24  sure, with recidivism, given Mr. Darden's past history, and so

25  I think that even he will admit, your Honor, that his

1  transformation, which is a word I used in my sentence
2  submission, is a work in progress, your Honor.
3          It's been 28 months since his arrest in this case.
4  Just in terms of physical assistance to the government, your
5  Honor, there were many, many, many meetings, you know, they
6  were in all different locations, so it's been a lot of work
7  with the government in an effort to transform.  And he's done a
8  lot of reprioritization.  I think the Court would be fair in
9  thinking that what you saw in the three days that he was on the
10 witness stand and the egregious sort of impeachment material
11 that came out, lie upon lie, the sheer volume of it and the
12 nature of it, would give the Court some pause that a person
13 like that is, you know, irredeemable.  I think people are
14 complex.  We saw that in the last sentencing.  People are
15 complex, your Honor, and people can transform.  He's not an old
16 man, your Honor.  He's a young man, who has considerable skills
17 that, if he uses them in the proper direction, can change the
18 way that he's behaving, your Honor.
19         One thing that has transformed him, your Honor, in
20 addition to the decision to cooperate with the government, your
21 Honor, is also the relationship that he's had with his children
22 over these past several years, your Honor.  He is living with
23 his daughter.  He's a primary caretaker for her.  His wife
24 works long hours, and so the effect of incarceration at a time
25 like this in his life is substantially different than it was on

1    his prior case, your Honor, before his daughter was even born,

2    let alone caring for her on a day-to-day basis.

3            I understand the need to balance your concerns about

4    recidivism and also to reflect the seriousness of the conduct,

5    your Honor, no question, but I think in light of the

6    substantial assistance -- emphasis on substantial, your

7    Honor -- and I think, for someone who hasn't spent any time in

8    jail, he spent 30 days in jail plus five months on home

9    confinement, he's been under supervision for 28 months.  I

10   believe, your Honor, I think that is sufficient punishment, and

11   the nature of things that I've discussed in my letter surely

12   has to be considered in terms of punishment, your Honor.  And

13   so I would ask that you impose a sentence that includes a

14   substantial period of supervision so that the Court can monitor

15   him, and if in fact Mr. Darden does not change the course of

16   his life, then you'd be able to obviously address that.

17           THE COURT:  So let me hear from the government, and

18   let me flag for the government an issue.  As indicated,

19   Mr. Darden's cooperation is substantial, and that is going to

20   weigh heavily in the sentence, and because of the nature of the

21   cooperation, in part, there are details that the Court cannot

22   get into.  But with respect to the case against Mr. Newkirk,

23   whose counsel I see is here and who will doubtless be

24   disappointed to learn that the Court did credit Mr. Darden's

25   testimony, but nevertheless, this was the unusual situation of

G7i1dars

someone more central to the fraud cooperating against someone of lesser centrality. Why should I give much credit for that?

MR. ADAMS: Your Honor, obviously the Court's very familiar with Mr. Darden's role and his cooperation in the Newkirk case. In the course of the Newkirk sentencing, the government obviously took a position that the Court did not adopt ultimately with respect to Mr. Newkirk's own centrality and role in that fraud. I do think that it is certainly not incorrect to say that Mr. Darden is the central figure of the Maxim fraud. I think it's driven by his personality and that had Mr. Darden not had the connections to make it happen, it would not have happened. I don't believe that Mr. Newkirk was substantially less culpable in the course of that fraud in the following sense: these two men knew exactly the scope of the same fraud. They knew exactly what was happening from the get-go. I think it is entirely incorrect, as Mr. Newkirk or his counsel may have argued, that at worst he consciously avoided knowledge of the Maxim fraud. I think he was actively involved in it. I think that he knew the scope, the goal, the extent from day one. And to that extent, although Mr. Darden is perhaps the central antagonist in the Maxim fraud, I don't believe that Mr. Newkirk is substantially less culpable, and certainly did not advocate for any sort of role adjustment for Mr. Newkirk.

I think that the nature of their crimes and their

1  fraud is divergent substantially in a way that the guidelines
2  don't capture.  What Mr. Darden did, the fraud that he
3  committed I think was a fraud on his father, which is something
4  that Mr. Newkirk was not involved in, in the sense that
5  Mr. Newkirk was not defrauding his own father, but I think that
6  Mr. Newkirk knew exactly what Mr. Darden was doing and assisted
7  him in every step of the way and did so because -- and I think
8  that this is something that certainly wasn't at the center of
9  the trial, and wasn't something that was necessarily hammered
10 home at sentencing either, but Mr. Newkirk had a financial
11 stake in that from day one.  I credit Mr. Darden's testimony on
12 that, and I think that the documents on that case made that
13 absolutely clear.
14          So to the extent that the Court is raising an issue or
15 a potential issue with the idea that, even setting aside
16 Mr. Darden's cooperation, his role in the Maxim fraud was
17 substantially larger and thus makes Mr. Newkirk's sentence
18 irrelevant in terms of gauging the two, I would disagree with
19 that.  I do believe that the two were coequals with respect to
20 that aspect of Mr. Darden's crimes.
21          THE COURT:  All right.  So let me hear from
22 Mr. Darden, if he wishes to be heard.
23          THE DEFENDANT:  Your Honor, to say that, you know, I'm
24 sorry is an understatement.  More than sorry, I'm embarrassed
25 and ashamed.  My father worked his entire life, you know, to --

1   and really built up the Darden name.  It's -- I can't even
2   begin to explain what this has done, you know, not -- not just
3   to my father individually, not just to my entire family, but
4   just our family name.  It's beyond embarrassing for having, you
5   know -- to have that play out publicly is -- is one thing, but
6   it's just, you know, the past two and a half years have been,
7   you know, the worst experience of my life, you know, tore my --
8   tore my family apart.  You know, we've been -- I've been trying
9   my best to kind of put it back together, as it is solely my
10  fault.
11             I don't really know what else to say outside of the
12  fact that I'm sorry, embarrassed, ashamed, to such a degree
13  that I'm just -- I just don't know the words.  Thank you.
14             THE COURT:  All right.  Well, just to dispose of a
15  side issue first, while this Court is completely convinced of
16  Mr. Newkirk's guilt and felt that the jury's verdict was fully
17  justified, I don't really share the government's view that they
18  stand on the same level.  I think Mr. Darden was more central
19  to the fraud.
20             But I say that's a side issue because what really
21  looms large here are two overwhelming facts beyond which, or
22  besides which, all other factors are secondary.
23             The first factor is that Mr. Darden is a recidivist,
24  and indeed, though he has, as his own eloquent statement shows,
25  great intelligence, great abilities, he has spent too much of

G7i1dars

1  his life engaged in fraud, and other misconduct. And were that
2  the entire story, I would not hesitate to impose a five-year
3  sentence or so in this case, because while I share defense
4  counsel's hopes for the future, the past is not a pretty
5  picture.
6       But on the other hand, he has rendered substantial
7  cooperation, not just in the Newkirk matter but in other
8  matters that are confidential but which are meaningful in many
9  respects applicable to sentencing and are entitled to
10 substantial weight. I don't think, however, that they so
11 totally erase his crime as to justify a term of time served.
12      So the sentence of the Court is that the defendant is
13 sentenced to one year in prison, to be followed by three years
14 of supervised release. All of this is concurrent on each of
15 the counts.
16      I'll get to the terms of supervised release in a
17 minute.
18      No fine will be imposed because the Court makes a
19 finding that in light of the very substantial restitution
20 requirement, this defendant is not going to be in a position to
21 pay a fine on top of all that.
22      Restitution is ordered in the sum of $4,050,000.
23      And I'll ask the government to remind me, was there a
24 forfeiture order?
25      MR. ADAMS: Your Honor, I had not submitted a

1    forfeiture order.  We are seeking a money judgment in the
2    amount of $9,050, and if the Court adopts that, I'm happy to
3    submit that.
4             THE COURT:  That's fine.
5             The terms of supervised release are:
6             First, the mandatory conditions that the defendant
7    shall not commit any other federal, state, or local crime;
8             That the defendant shall not illegally possess a
9    controlled substance;
10            That the defendant shall not possess a firearm or
11   destructive device;
12            That the defendant shall cooperate in the collection
13   of DNA.
14            The fifth mandatory condition, the drug testing
15   condition, is suspended, based on the Court's determination
16   that this defendant poses a low risk of future substance abuse.
17            There will also be imposed the standard conditions of
18   supervision 1 through 13.  They appear on the face of the
19   judgment and will be gone over with the defendant by the
20   probation officer when the defendant reports to begin his
21   period of supervised release.
22            And finally, there are the special conditions:
23            First, that the defendant shall provide the probation
24   officer with access to any requested financial information;
25            Second, that the defendant shall not incur new credit

G7i1dars

charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule, which will be a schedule of 15 percent of his gross monthly income, beginning 30 days after he begins his supervised release;

And finally, the defendant will, within 72 hours of his release from custody, report to the nearest probation office to begin his period of supervised release, and he will be supervised by the district of his residence.

Now before I advise the defendant of his right of appeal, anything else, first, from the government?

MR. ADAMS:  Your Honor, just two quick things.  First, with respect to the money judgment, let me just clarify, that would be with respect to Counts One and Two only.  That's not --

THE COURT:  Yes.

MR. ADAMS:  With respect to the restitution, the government submitted a proposed order.  If the Court is adopting that.

THE COURT:  I am adopting that, but I for some reason -- ah, there it is.  Okay.

MR. ADAMS:  I only mention it because of the joint and several liability portion.

THE COURT:  Yes, yes, yes.  Hold on just a moment.

I looked at this earlier.  I just forgot to bring it

G7i1dars

1  with me on the bench.
2           Okay.  So I'm now signing that order and handing it to
3  my courtroom deputy to docket.
4           MR. ADAMS:  Thank you, your Honor.  Otherwise, nothing
5  from the government.
6           THE COURT:  Okay.  From the defense.
7           MS. BROWN:  Your Honor, I heard all of the Court's
8  sentence.  I'm just going to ask you to reconsider, your Honor,
9  and impose a sentence of 12 months and one day, which would
10 allow him to get --
11          THE COURT:  Good time.
12          MS. BROWN:  Yes.
13          THE COURT:  No.
14          MS. BROWN:  With respect to the location of service of
15 the sentence, your Honor, I would ask that you recommend to the
16 Bureau of Prisons that it be as close as possible to the New
17 York City area so that it can facilitate visits.
18          THE COURT:  Yes, that's well warranted.  I will
19 certainly recommend that, although as I'm sure you've told your
20 client, I can't order it; I can only recommend it.
21          All right.  Very good.  Mr. Darden, you have a right
22 to appeal this.  Do you understand that?
23          THE DEFENDANT:  I do.
24          THE COURT:  If you can't afford counsel for the
25 appeal, the Court will appoint one for you free of charge.  Do

1  you understand that?
2          THE DEFENDANT:  I do.  Thank you.
3          THE COURT:  Now my courtroom deputy, who recognizes
4  that I need all the help I can get, reminds me that we haven't
5  yet set a date for voluntary surrender.  So that would normally
6  be approximately 45 days from today.
7          MS. BROWN:  Your Honor, would you consider
8  September 12th?
9          THE COURT:  I would.  So September 12th at 2 p.m. at
10 the designated institution.
11         All right.  Anything else we need to take up today?
12         MR. ADAMS:  Your Honor, there's an underlying
13 instrument.  The government moves to dismiss it.
14         THE COURT:  And that motion is granted.
15         MR. ADAMS:  Nothing else from the government.
16         MS. BROWN:  Nothing else, your Honor.
17         THE COURT:  Very good.  Thanks a lot.
18         (Adjourned)
19
20
21
22
23
24
25