J3iddarc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                 New York, N.Y.

          v.                              14 Cr. 0534-01(JSR)

CALVIN R. DARDEN, JR.,

               Defendant.

------------------------------x

                                          March 18, 2019
                                          3:14 p.m.

Before:

                    HON. JED S. RAKOFF,

                                          District Judge

                         APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  ANDREW ADAMS
     Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK INC.
     Attorneys for Defendant
BY:  JENNIFER L. BROWN

          – also present –

Ryan Lehr, U.S. Probation Department (EDNY)

Jaleesa Harris, U.S. Probation Department (SDNY)
```

1         THE CLERK:  This is March 18, 2019.  This is United
2   States versus Calvin Darden, Jr., Docket Number 14 Cr. 534,
3   Defendant No. 1.
4         Will everyone please be seated and will the parties
5   please identify themselves for the record.
6         MR. ADAMS:  Yes.  Good afternoon, your Honor.  Andrew
7   Adams for the United States, and with me at counsel table are
8   Probation Officers Ryan Lehr of the Eastern District and
9   Jaleesa Harris of the Southern District.
10        P.O. LEHR:  Good afternoon, your Honor.
11        P.O. HARRIS:  Good afternoon, your Honor.
12        THE COURT:  Good afternoon.
13        MS. BROWN:  Good afternoon, your Honor.  Jennifer
14  Brown for Mr. Darden.
15        THE COURT:  Good afternoon.
16        So I guess my first question is where does Mr. Darden
17  stand in terms of employment?
18        MS. BROWN:  Your Honor, he recently obtained
19  employment --
20        THE COURT:  I'm sorry, you need to either bring the
21  microphone closer to you or -- yes.
22        MS. BROWN:  He recently obtained employment full-time,
23  your Honor, salaried employment.  He provided documentation to
24  the Probation Department.  The Probation Department
25  discussed -- spoke with the potential employer.  There was a

J3iddarc

1    slight issue in that the owner of the company also has a prior
2    conviction but was interested in offering employment to other
3    people with prior convictions, and so the Probation Department
4    vetted it more carefully than they otherwise if he didn't have
5    a prior conviction.  So, he is recently, your Honor, employed.
6             THE COURT:  So let me just ask the probation officer:
7    That is all correct?
8             P.O. LEHR:  That is correct, your Honor.
9             THE COURT:  So what is the nature of the employment.
10            P.O. LEHR:  He is head of business development for an
11   apparel company.
12            THE COURT:  And what does he get paid?
13            P.O. LEHR:  51,800.  Is that correct?
14            MS. BROWN:  52-8.
15            P.O. LEHR:  52-8, your Honor.
16            THE COURT:  OK.  Very good.
17            So where we do we stand in terms of him in terms of
18   restitution?
19            MR. ADAMS:  Your Honor, my understanding from Officer
20   Lehr is that there has been another recent payment in the last
21   week or so, since the last time we saw the Court.  And now that
22   Mr. Darden has employment, I expect that there is going to be a
23   further conversation with the Financial Unit with my office to
24   discuss that payment plan that had been --
25            THE COURT:  Well, you may recall -- and let me just

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   remind you -- that your office unilaterally, without notifying
2   the Court, reduced the monthly payment to $200 a month.  That
3   had never been approved by the Court, and I don't want that to
4   happen again.  So, if you enter into any new arrangement, you
5   had better clear it with me first.
6           MR. ADAMS:  Certainly, your Honor.
7           THE COURT:  All right?
8           MR. ADAMS:  And I will convey all of that to the unit
9   as well.
10          THE COURT:  But now do I understand from what you just
11  said that he is not -- is he up to date on the $200 a month, or
12  no?
13          P.O. LEHR:  Yes, he is, your Honor.  He made a lump
14  sum payment of 600.
15          THE COURT:  OK.  Very good.
16          Then I think the only other issue, which I'm not sure
17  needs to involve the Court, at least at this point, is there
18  apparently were some private arrangements reached between
19  Mr. Darden's father and some of the parties that were owed
20  restitution so that they would no longer be owed restitution.
21  Do I have that right?
22          MR. ADAMS:  There were private agreements among those
23  parties, not necessarily for the purpose of satisfying
24  restitution, but I do think the Court is correct that --
25          THE COURT:  Whoa, whoa, whoa, whoa, whoa.  If they

weren't for -- a victim presumably, whatever you call it, only has a sum certain in terms of loss. So if they get paid a portion of that loss and it's called fibberty-jibberty, it still reduces what Mr. Darden has to pay -- the defendant, Mr. Darden, has to pay by way of restitution to that person.

        MR. ADAMS: Your Honor, respectfully, if it is in a civil -- if it is in a civil proceeding, either in a state or federal proceeding, and it is for the same loss that's calculated in the restitution, that's correct, and there is a mechanism in the statute that allows for that offset. In this case, outside of that specific context, I can imagine that the victim would -- at least one of these victims would probably say, one, that's not really all I was owed and my loss greatly exceeds the amount that I paid out directly in furtherance of the fraud, I had opportunity costs, etc., etc., that might not actually correspond to what they were seeing. Another victim in this case may receive a sum that was substantially less than what their restitution amount is, so regardless of how loss is -- or how that amount is quantified, they would still be owed something.

        But from the government's perspective, there is the possibility that Mr. Darden, Sr. would have a claim against either of those victims for subrogation, essentially, but there is no offset under the restitution statute. And I think the Court is correct, there is no motion from the government. I

1    don't believe that there is a motion from --
2             THE COURT: No. If there is no motion from anyone,
3    then it makes my job easy.
4             But let me ask defense counsel: I understand the
5    hypotheticals that the government has raised, which may or may
6    not be accurate because no one has even seen these agreements,
7    but if in fact payment was made by Mr. Darden's father that
8    should be offset against his restitution amount, I would have
9    thought you might like to know that?
10            MS. BROWN: Your Honor, I was unfamiliar with the case
11   that the government cited, U.S. v. Tutterow, until they
12   submitted it, and it seems to me that the case cited by the
13   government does say what they said it is, which is that an
14   out-of-court settlement does not offset restitution.
15            THE COURT: Well, I don't understand that, and
16   moreover, while I haven't taken a look at that case, it is a
17   case from the District of Nevada in 2013, which doesn't make it
18   binding on me. So why don't we get someone to furnish the
19   parties with the private agreements.
20            MR. ADAMS: Your Honor, if I could add just one more
21   piece of information for context? That is, from Mr. Darden,
22   Sr.'s perspective -- and I have spoken with his counsel -- in
23   the event that there were some offset for, for example, Open
24   Gate in this case, Mr. Darden, Sr. has, through his counsel,
25   expressed to me that he would want to step into their shoes.

1   So, certainly from his perspective, this was not a payment of
2   Mr. Darden, Jr.'s restitution obligation, it was a --
3           THE COURT:  Well, you know, I have a recollection that
4   there were family tensions that undoubtedly have escalated
5   perhaps even further, but I guess my question is this.  It is
6   really a question for defense counsel.  Would you like to see
7   the private agreements so that you can determine whether or not
8   you may have a claim for reducing Mr. Darden's restitution, or
9   do you think that is improvident or tactically unwise on your
10  part?
11          MS. BROWN:  May I have a minute?
12          THE COURT:  Yes.
13          (Pause)
14          MS. BROWN:  Your Honor, I'm not making that request
15  right now.
16          THE COURT:  I'm sorry.
17          MS. BROWN:  I am not making that request right now,
18  your Honor.
19          THE COURT:  OK.  Well, then there is nothing for me to
20  do, so, other than make sure that Mr. Darden then remains
21  liable for the full and total restitution ordered by the Court.
22          But right now $200 a month will remain in place until
23  and unless I hear from the government as to any proposal about
24  that.
25          Well, I'm delighted Mr. Darden has obtained

1 employment.  That was the most important thing, so.  And I will
2 ask the probation officers to keep me fully informed of any
3 material developments.
4             P.O. LEHR:  Yes, your Honor.
5             THE COURT:  All right.  Very good.  Thanks a lot.
6             MR. ADAMS:  Thank you, your Honor.
7             THE CLERK:  All rise.
8             (Adjourned)